BROWN-CAMP HARDWARE CO. v. W. S. HAWTHORNE ET
AL. and H. C. HAWTHORNE, Intervener, Appellants.

Fraudulent conveyances: CHANGE OF POSSESSION: EVIDENCE. Where
the vendor of personal property retains possession no sale or
mortgage of the same is valid as against existing creditors or
subsequent purchasers, unless a written instrument as in the case
of conveyances of real property is signed, acknowledged and re-
corded. In the instant case the evidence is held insufficient to
show such change of possession as would indicate change of
ownership.

Appeal: DECISION ON CONFLICTING EVIDENCE. Where the testimony
concerning notice of ownership of property is conflicting the
finding of the court, like the verdict of a jury, is conclusive
on appeal.

Fraudulent conveyances: ATTACHMENT: NOTICE OF OWNERSHIP. One
about to attach property who has received notice from a repu-
table commercial agency that defendant claims to have sold the
property is thereby put upon inquiry as to the title, unless the
circumstances are such as tend to support a contrary conclusion.

Same: EVIDENCE. In this action involving title to a stock of goods
the evidence is held to sustain a finding that a transfer thereof
was in fraud of creditors, and that the design to hinder and
delay was participated in by the purchaser.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN,
Judge.

FRIDAY, MARCH 15, 1912.

SUIT on promissory note executed by W. S. Hawthorne
aided by the levy of a writ of attachment. H. C. Haw-
thorne intervened, claiming the property, and from the
dismissal of the petition of intervention, he appeals.—
*Affirmed.*

*C. J. Eller,* for appellant.

*C. F. Maxwell* and *N. T. Guernsey,* for appellee.

LADD, J.—W. S. Hawthorne had operated a hardware store under the trade-name "Hawthorne Hardware Company" and conducted a plumbing business for several years. Indebtedness for goods purchased of plaintiff had accumulated, and for some time previous to the beginning of this action, cash payments had been exacted. This action was begun January 10, 1911, aided by writ of attachment levied on the stock of goods. Notice of ownership, accompanied by affidavit of H. C. Hawthorne, brother of defendant, was served on the sheriff, and on January 14, 1911, a petition of intervention, alleging that H. C. Hawthorne had purchased the stock of goods in July, 1910, and praying that the same be returned to him, was filed. The issues were determined against the intervener.

I. Though a written contract of sale, in which defendant W. S. Hawthorne agreed to sell the "hardware stock" to H. C. Hawthorne at "invoice price" for "all new

1. FRAUDULENT CONVEYANCES: change of possession: evidence.

and good goods" was signed by them, no mention of others or of fixtures was made, and the payment of the difference between the defendant's alleged debt to H. C. Hawthorne and the stock was "to be settled for any time when satisfactory to W. S. Hawthorne as our accounts may appear." No change whatever occurred in the operation of the store, save that H. C. Hawthorne may have been present a little more of his time than formerly. It continued under the same name. An inventory was taken but never computed, the parties claiming to have "lumped" the amount. H. C. Hawthorne continued to work about the store, as he had done before as an employee of defendant, and defendant continued to wait on customers when there. Goods were purchased in the name of "Hawthorne Hardware

Company" precisely as before the alleged sale. The bank account was not changed, and checks signed by W. S. Hawthorne, only, issued in payment of goods purchased, and he appears to have bought most of the goods from plaintiff and others, as needed, and paid therefor by giving his individual checks. When trouble arose about an order, he, and not the intervener, adjusted the matter with the plaintiff. Both continued in the occupancy of the building, the lease not being assigned, and no notice whatever was given plaintiff of any change in possession or ownership. The deputy sheriff testified that, at the time of the levy, H. C. Hawthorne was in possesion. This was in the nature of a conclusion, and evidently was intended to convey the thought that he was in charge of the store when the deputy arrived. From this evidence the district court might well have concluded that there had been no change in possession such as exacted under section 2906 of the Code, declaring that "no sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides." The change in possession must be such as to indicate a change of ownership. Here there was no act such as to apprise the world that one other than the defendant claimed any interest in the property. "The law contemplates that there shall be a change of possession—something to indicate the fact of the purchase, the change of ownership of the property by the claimant. If, therefore, the property be left with the seller, whose relations to it continue unchanged, so far as the world may know by the acts of the parties the possession will be regarded as continuing in him. The absence of acts of control or ownership, on the part of the seller, will not be evidence

that the actual possession was transferred to the purchaser."
*Boothby v. Brown,* 40 Iowa, 104; *Sutton v. Ballou,* 46
Iowa, 517; *Hickok v. Buell,* 51 Iowa, 655; *McAfee v.
Busby,* 69 Iowa, 328. We are not inclined to interfere
with the finding that there had been no such change of
possession as to afford notice of any change in ownership.

II.   Intervener testified that he informed the deputy
sheriff before making the levy that he was owner of the
property. On the other hand, the deputy testified that the
intervener did tell him that an automobile

2. APPEAL:
decision on
conflicting
evidence.

he had seized belonged to his father; but he
had no recollection of having heard anything
said about intervener owning or claiming the stock of
goods. This raised an issue, and, as the decision of the
court is to be accorded the force of a verdict by the jury,
we can not interfere.

III.   The credit manager was called by plaintiff and
testified that neither the defendant nor intervener had no-
tified it of the transfer. On cross-examination, however,
he admitted that he had received on the day

3. FRAUDULENT
CONVEYANCES:
attachment:
notice of
ownership.

previous to the levy of the writ of attach-
ment notice from the well-known mercantile
agency, R. G. Dun & Co., in words follow-
ing: "Hawthorne Hardware Company, not incorporated;
Hardware, Plumbing, etc., Des Moines, Iowa, Polk Coun-
ty, Jan. 6, 1910. Walter S. Hawthorne has been the owner
of the business, though he says that he has sold to his
brother, H. C. Hawthorne, who continues the business
under the old style. K. for investigation." This, in view
of its source, can hardly be classed as a vague rumor or a
report from a mere stranger. It came from one of the
agencies whose occupation is the gathering of information
for the use of those engaged in trade, and in reliance upon
whose reports much of the business of the country is trans-
acted. Possibly such a notice is not always to be regarded
as conclusive in putting him who receives it upon inquiry,

but, if not, the circumstances must be such as tend to support a conclusion to the contrary. It is extremely doubtful whether the circumstances recited were so inconsistent with the information contained in this notice as to raise an issue of fact as to whether plaintiff was put on inquiry concerning the transfer. That proposition, however, need not be decided, for the evidence was sufficient to sustain a finding that the transfer, if any, was in fraud of creditors.

The plaintiff had been pressing defendant for payment for some time, and from the facts recited the court **4. SAME: evidence.** might well have inferred that his design in attempting to transfer the stock of goods to his brother was to hinder and delay, if not to defraud, it in the collection of its claims.

True, intervener testified that defendant then owed him $500 as a balance due for services rendered as plumber during the four years previous, and that he paid $300 in cash, and defendant thought the payment about this sum, but, though books of account were kept, these were not adduced to prove such balance, nor was there any showing as to the source from which intervener obtained the cash paid. The circumstances shown cast suspicion on the entire transaction, and the intervener's manifest assistance in concealing it warranted the conclusion that he was a participant in carrying out defendant's design to hinder and delay the collection of the indebtedness to plaintiff—at least the evidence was such as to preclude any interference with such conclusion.—*Affirmed.*